WILLIAM H. THOMAS (ISB 3154)
DANIEL E. WILLIAMS (ISB 3920)
HUNTLEY PARK, LLP
250 South Fifth St., Suite 660
P. O. Box 2188
Boise, ID  83701
Telephone (208) 345-7800
Fax:  (208) 345-7894
wmthomas@huntleypark.com
danw@huntleypark.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT FOR THE STATE OF IDAHO

| | |
|---|---|
| DAWN C. KNICKERBOCKER, VIRGINIA L. ATCHLEY, and TAMMY L. BATCH, individually and on behalf of those similarly situated,<br><br>     Plaintiff,<br><br>vs.<br><br>ADA COUNTY, IDAHO,<br><br>     Defendant. | Case No. CV 04-288-S-BLW<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CERTIFICATION** |

## INTRODUCTION

This case involves the misclassification of certain employees of the Ada County Sheriff's Office ("the Sheriff's Office") as exempt from the overtime pay requirements of the Fair Labor Standards Act ("FLSA"). The particular job title at issue is that of "Jail Technician," a non-commissioned support position within the Sheriff's Office. Prior to April, 2004, the Sheriff's Office claimed that most Jail Technicians were exempt as employed in "law enforcement activities" under 29 U.S.C. § 207(k) ("the 7(k) exemption"). Accordingly, most Jail Technicians were placed on a schedule of four twelve-hour shifts per week without regular payment of overtime for hours worked in excess of forty in the week.

Approximately, April, 2004, however, the Sheriff's Office determined that "jail technicians were improperly placed on that schedule"[1] and began a calculation of overtime due to those jail technicians. According to an e-mail from the Jail Captain, the change in schedule was "needed to bring us in line with FLSA rules. . ."[2] On about June 1, 2004, the Sheriff's Office provided payment to jail technicians who were employed during the previous two years for overtime amounts calculated as due for the previous two year period. According to the Sheriff's Office, it utilized an individual's highest rate of pay and added 5%. The Sheriff's Office did not, however, include jail technicians who had worked during the third previous year, or provide

---

[1] See, Exhibit 4 to the Rule 30(b)(6) Deposition of Ada County, Testimony of Randy Folwell of February 3, 2005, attached as Exhibit "A" to the Affidavit of Daniel E. Williams, filed concurrently.

[2] See, Exhibit 17 to the Rule 30(b)(6) Deposition of Ada County, Testimony of Randy Folwell of February 3, 2005, attached as Exhibit "A" to the Affidavit of Daniel E. Williams, filed concurrently.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR CERTIFICATION, P. 2

payment for the third previous year, or include liquidated damages. This case primarily deals with Plaintiffs' contention that Defendant's inaccurate claim prior to April, 2004, that jail technicians were exempt under the 7(k) exemption was "wilful" under 29 U.S.C. § 255(a) of the FLSA, so as to extend the statute of limitations to three years. Similarly, Plaintiffs contend that Defendant did not act in good faith so as to defeat Plaintiffs' entitlement to liquidated damages under 29 U.S.C. § 216(b).

Thus, Plaintiffs seek certification of a class consisting of individuals employed as Jail Technicians with the Ada County Sheriff's Office between June 8, 2001 (three years prior to the filing of this lawsuit), and June 8, 2004, who were classified and paid by Defendant as if they were exempt from the overtime requirements of the FLSA.

## STATEMENT OF RELEVANT FACTS

Up until approximately April, 2004, most Jail Technicians were classified by Defendant as exempt from the overtime requirements of the FLSA pursuant to the 7(k) exemption for law enforcement activities. They were scheduled on four shifts of twelve hours and were not regularly paid for hours worked above forty in a workweek.

Captain Randy Folwell, Defendant's Rule 30(b)(6) designee, described the job of a jail technician with the Sheriff's Office:

> In the non-commissioned ranks, there are inmate records people assigned to the jail and jail techs. Jail techs have the opportunity to work on a booking desk behind the desk entering date, things that you don't need a commissioned deputy to do, running controls, dealing with inmate property, a variety of tasks that don't lend themselves well to somebody we invested time and money in to send to Post to learn how to be a law enforcement deputy, it doesn't necessarily make them a good data input person.
> * * *

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR CERTIFICATION, P. 3

> Originally the training was always cross-training. So, the thought being, you know, if inmate records is slow, the booking desk is not slow, they could bring somebody there, vice versa. If it slowed down in booking, they could go back to inmate records and work. And a lot of cross-training and just a lot of movement on any given shift perhaps for a number of the non-commissioned positions.
>
> Q. Is that considered a support position?
>
> A. Well, I would considered it a support position, yes.
>
> Q. And by "non-commissioned," we mean someone whose responsibility is primarily not as a law enforcement officer and does not carry a firearm?
>
> A. That's correct.[3]

For a time, Jail Technicians had more physical contact with inmates, doing fingerprinting and photographing, among other duties that were not hands-on (Folwell: 29-30). Because of a lack of training and because of the potential they could be hurt, along with an increase in medium security inmates, over a ten-year period the practice gradually changed from allowing non-commissioned employees in areas with inmates to using more commissioned deputies (Folwell: 30-31). Other than changing the written job description to provide for a minimum age of 19 rather than 21, nothing in the written job descriptions for Jail Technicians from January, 1993, to present jumped out at Captain Folwell as" hugely different" (Folwell: 41).[4]

Jail Technicians were never required to attend academy training (Folwell: 42). They have never been required to complete a physical fitness course (Folwell: 42-43). They have never

---

[3] Rule 30(b)(6) Deposition of Ada County, Testimony of Randy Folwell of February 3, 2005, pp. 24-25, which is attached as Exhibit "A" to the Affidavit of Daniel E. Williams. Subsequent references to this deposition are cited to "Folwell" by page number.

[4] The actual written job descriptions for the period are attached as Exhibits 1 and 2 to the Folwell deposition which is attached as Exhibit "A" to the Affidavit of Daniel E. Williams.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR CERTIFICATION, P. 4

been required to complete any kind of self-defense course (Folwell: 43). They have never been required to complete any firearm proficiency course (Folwell: 43). Captain Folwell is unaware of Jail Technicians being required to complete any course on how to conduct an investigation (Folwell: 44). Jail Technicians did not have arrest powers (Folwell: 44).

About a year prior to April, 2004, discussions in the Sheriff's Office began regarding redeploying personnel in anticipation of a new part of the jail opening (Folwell: 98). At the same time, discussions took place leading to the decision to stop having non-commissioned Jail Technicians on 12-hour shifts (Folwell:97-98). According to an e-mail sent by the Jail Captain regarding the announcement of the change from 12-hour shifts for Jail Technicians, "this change was needed to bring us in line with FLSA rules" (Folwell: Exhibit 17).

Ultimately, Captain Folwell was charged by Undersheriff Gary Raney with going back two years in making a payment for overtime to jail technicians (Folwell: 73-74), which payments were calculated for the period June 1, 2002, to June 1, 2004 (Folwell: 87). Jail Technicians who worked during this period were purportedly paid for overtime due them at a rate of 1.5 times their highest regular rate during the period, less any overtime actually paid, plus an additional 5% (Folwell: Exhibit 5). Sixty-four (64) Jail Technicians received payment on about June 1, 2004.[5] According to Defendant's counsel, if Defendant had gone back three years instead of two, an additional thirty-one (31) Jail Technicians would have been eligible for payment.[6]

---

[5] See, Answer to Interrogatory No. 13 of Defendant's Answers and Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents to Defendant, p. 7, attached as Exhibit "B" to the Affidavit of Daniel E. Williams, filed concurrently.

[6] See, Affidavit of Daniel E. Williams, ¶ 7.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR CERTIFICATION, P. 5

## ARGUMENT

Although Plaintiffs need not prove the merits of the class claim at this juncture or even establish a probability that this action will be successful, *see, e.g., Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-178, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974), Plaintiffs submit that they maintain colorable claims of wilfulness and lack of good faith on the part of Defendant under the FLSA. For example, as early as 1997 the Sheriff's Department was receiving inquiries regarding the scope of the 7(k) exemption that would have led any responsible agency to conclude that its non-commissioned Jail Technicians did not fulfill the requirements of the exemption (Folwell: Exhibit 13).[7]

Plaintiffs first review the specific showing required for Rule 23 certification below.

### A. PLAINTIFFS MEET THE REQUIREMENTS OF RULE 23(a).

#### 1. Numerosity.

Rule 23(a)'s first requirement Under Rule 23(a)(1), the proposed class must be so large that joinder of all members is impracticable. Plaintiffs submit that their proposed class of ninety-five (95) individuals easily satisfies this test. *See, e.g., Thonen v. McNeil-Akron, Inc.*, 661 F.Supp. 1271 (N.D. Ohio 1986) (an ERISA class of 79 retirees was certified). As stated in a

---

[7] According to 29 C.F.R. §§ 553.210(a) and (b), *bona fide* "law enforcement activities" that would support the 7(k) exemption are activities of employees who (1) have power to enforce public safety and criminal laws; (2) who have arrest powers; and (3) who are, have been, or will be trained and instructed in physical training, self-defense, firearm proficiency, criminal and civil law principles, investigation and law enforcement techniques, community relations, medical aid, and ethics. In addition to the Rule 30(b)(6) depositino testimony summarized above, Defendant has admitted in response to requests for admissions that the Jail Technician position did not meet these elements. See, Defendant's Responses to Plaintiffs' First Set of Requests for Admission, pp. 5-9, attached as Exhibit "C" to the Affidavit of Daniel E. Williams, filed concurrently.

leading treatise, "[i]n light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23 (a)(1) on that fact alone." 1 Newberg on Class Actions, §3:5, p. 247 (West 2002) (hereafter "Newberg").

### 2. Commonality.

The second prong of the Rule 23(a) test is that there must be questions of law or fact common to the class. As many cases have held, this commonality requirement "is not demanding." *See, e.g., Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 625 (5th Cir. 1999); 1 Newberg §3:10 ("this requirement is easily met in most cases"). The test is met when the resolution of at least one issue will affect all, or substantially all, of the putative class members. *Mullen, supra*, 186 F.3d at 625. Here, all of the class members were first misclassified as exempt and then re-classified by Defendant under the FLSA. They belong to one job category, that of Jail Technician. The resolution of the wilfulness issue will affect all who worked during the third previous year. The resolution of the good faith defense will affect all who will then be eligible for liquidated damages.

### 3. Typicality.

Under this third prong, the proposed class representatives must have claims or defenses that are typical of the class. Like the commonality requirement, the test for typicality is not demanding. *See, e.g., Stirman v. Exxon Corp*, 280 F.3d 554, 562 (5th Cir. 2002). As long as the proposed class representatives are members of the class having the same interests and having suffered generally the same type of injury, the representative's claims do not need to be identical

to the claims of the rest of the putative class. *See, De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (when claims arise from same event, practice, or course of conduct and are based on same legal theory, test may be satisfied even if there are factual distinctions between claims).

In this case, Defendant has admitted that Plaintiff Dawn C. Knickerbocker was employed by the Sheriff's Office from October 30, 1995, to January 30, 2004, that Plaintiff Virginia L. Atchley was employed from April 1, 1995, until her retirement on July 26, 2004, and Plaintiff Tammy L. Batch was employed from June 29, 1998, to July 11, 2003.[8] Accordingly, all three proposed class representatives were employed during the third previous year before their Complaint was filed and for which Defendant offered no compensation. Likewise, all three would be entitled to liquidated damages if Defendant's good faith defense fails. Accordingly, Plaintiffs' claims are typical of class members.

### 4. Adequacy of representation.

Finally, under Rule 23(a) the class representatives must show that they will fairly and adequately protect the interests of the class. This test is met by satisfying a number of elements:

**(a)  Member of the class.** First, representatives must be members of the class. *East Tex. Motor Freight Sys., Inc., v. Rodriguqez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977). Defendants have admitted that, prior to April 4, 2004, all three Plaintiffs were classified by the Ada County Sheriff's Office as exempt under the FLSA.[9]

---

[8]  See, Answer to Second Amended Complaint (docket # 16), p. 3, ¶ 5.

[9]  See, Defendant's Responses to Plaintiffs' First Set of Requests for Admission, pp. 2-3, attached as Exhibit "C" to the Affidavit of Daniel E. Williams, filed concurrently.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CERTIFICATION, P. 8

**(b)** **No conflicts.** For obvious reasons, representatives must have the same interests as the class members and cannot have a conflict of interest with the class members. *Ibid.*, 431 U.S. at 403. As set forth in the Affidavits of Dawn C. Knickerbocker, Virginia L. Atchley, and Tammy L. Batch, there are no conflicts between any one of the proposed class representatives and the interests of the class.

**(c)** **Same Injury.** Plaintiffs have suffered the same injuries as the class members in that they, like the class, were not provided compensation for the third prior year and were not offered liquidated damages.

**(d)** **Means.** As set forth in their Affidavits, Plaintiffs have the means and interest in advancing the cause of the absent class members.

**(e)** **Competent Class Counsel.** As set forth more fully in the Affidavit of Daniel E. Williams, the class counsel chosen by Plaintiffs is competent to prosecute this action on behalf of the class. Specifically, under Rule 23(g)(1)(C)(I), F.R.C.P., counsel has (1) performed the work necessary in identifying and investigating potential claims in the action; (2) counsel are experienced in handling class actions and complex litigation; (3) counsel are knowledgeable regarding applicable law; and (4) counsel will commit the necessary resources to represent the class. Pursuant to Rule 23(g)(1)(C)(ii), counsel do not have conflicts of interest with class members nor does there exist any other reason why counsel should not serve as class counsel.

## B.     PLAINTIFFS MEET AT LEAST ONE OF THE TESTS OF RULE 23(b).

In addition to satisfying all Rule 23(a) requirements, a class action must also satisfy the requirement of one of the three categories under Rule 23(b). Plaintiffs believe they satisfy the test of Rule 23(b)(3).

### 1.     Common questions of law or fact predominate over any questions affecting only individual members.

Under Rule 23(b)(3) an action may be maintained as a class action if the prerequisites of Rule 23(a) are satisfied, and in addition:

> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The main Rule 23(b)(3) test is thus known as the predominance test. Here, as opposed to other hypothetical FLSA violations, this case is perhaps uniquely suited to meet the predominance test. Perhaps most significant, Defendant treated the members of the class like a class – it first claimed they were exempt under the same 7(k) exemption, then decided to drop that claim in approximately April, 2004. It decided to pay all of them back-overtime for a period of two years, but as to all did not go back three years or include liquidated damages. All class members belonged to the same job category, that of Jail Technicians. All performed a variety of similar support functions within the Ada County Jail.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR CERTIFICATION, P. 10

The critical issue at trial will be focused on the Defendant rather than on the individual members of the class, that is, whether Defendant's violation of the FLSA was wilful and whether it enjoys a good faith defense for its violation. Although individual damage calculations will vary somewhat, that is merely a matter of calculation. The key issue for resolution will remain Defendant's conduct rather than any individual issue.

Further, it is clear that Plaintiffs meet the specific criteria set forth in Rule 23(b)(3)(A) through (D). As with most class actions, the individual amounts at stake for each class member would likely be insufficient to justify the costs associated with litigating an individual claim, so individual class members have little recognizable interest in controlling the prosecution of individual actions under subsection (A). Plaintiffs are aware of no pending action under subsection (B) other than this one. Under subsection (C), it is desirable for this Court to manage these multiple, almost identical claims in a single forum. Finally, as FLSA classes go, this particular action is likely to present very few difficulties under subsection (D) because of the focused nature of the liability issues and the ease with which damages may be calculated.

Thus, Plaintiffs submit that they have made an adequate showing to certify a Rule 23 class of all Jail Technicians whom Defendant classified and treated as 7(k) exempt between June 8, 2001, and June 8, 2004. Thus, upon certification, Plaintiffs ask the Court to order Defendant to provide names and addresses of all absent class members for purposes of providing notice. Upon the Court's order certifying a Rule 23 class, Plaintiffs will submit a proposed form of notice to absent class members with the requisite opt-out right.

### C.   IN THE ALTERNATIVE, PLAINTIFFS SEEK CONDITIONAL CERTIFICATION OF A SECTION 16(b) CLASS UNDER THE FLSA.

Although Plaintiffs prefer the Rule 23 mechanism in this case due to the particular circumstances and issues set forth in this case, as discussed above, in the alternative, Plaintiffs seek conditional certification pursuant to Section 16(b) of the FLSA for purposes of providing an "opt-in" notice to potential class members.

As this Court and most others have ruled, a two-step certification process is appropriate in FLSA collective actions. *See, e.g., Mooney v. Aramco Services Co.*, 54 F.3d 1207 (5th Cir. 1995). At first stage or notice stage of the certification process, the court determines whether the proposed class is "similarly situated" under Section 16(b) for purposes of sending notice to potential class members for purposes of allowing them to opt-in to the suit. At the second stage or "final certification" stage, the court undertakes a more thorough examination of whether the class is similarly situated. *Ibid.* Plaintiffs need not be in identical circumstances to satisfy the "similarly situated" requirement, *see, e.g., Moss v. Crawford & Co.*, 201 F.R.D. 398, 409 (W.D. Pa. 2001), but there must be "a factual nexus which binds them together as victims of an alleged policy or practice." *Ballaris v. Wacker Silttronic Corp.*, 2001 WL 1335809, at *2 (D. Or. Aug. 24, 2001) (internal quotation marks and citations omitted).

In the instant case, it is clear that the proposed class were victims of a common policy or practice. Prior to approximately April, 2004, it is uncontested that Defendant treated this class of Jail Technicians as exempt under the 7(k) exemption to the FLSA.[10] It then acknowledged that they should not have been exempt. Defendant then provided certain compensation to the entire class, but did not provide all of the compensation that Plaintiffs contend was due. Under these circumstances, there is no real question that Plaintiffs and the class were bound together as victims of a common policy or practice and are similarly situated.

Accordingly, in the alternative, Plaintiffs seek the Court's order requiring Defendant to provide names and addresses for the absent class members for purposes of providing them with notice and an opportunity to opt-in to this litigation.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for Rule 23 certification. Accordingly, Plaintiffs seek the Court's Order:

(1) certifying the class of Jail Technicians employed by Defendant at the Ada County Sheriff's Office at any time between June 8, 2001, and June 8, 2004, whom Defendant classified as exempt under the 7(k) exemption;

(2) appointing William H. Thomas and Daniel E. Williams of Huntley Park, LLP as class counsel;

---

[10] As set forth earlier, Defendant did not classify each and every Jail Technician as exempt. A few were classified as non-exempt. Obviously, Plaintiffs only seek to certify a class of those Jail Technicians who were classified as exempt by Defendant during the relevant time period.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR CERTIFICATION, P. 13

(3) requiring Defendant to provide names and addresses of absent class members; and

(4) requiring the Parties to confer on a form of Rule 23(b)(3) notice with opt-out right.

In the alternative, Plaintiffs request that the Court grant their motion for Section 16(b) certification pursuant to the FLSA and specifically its Order:

(1) conditionally certifying an FLSA collective action of Jail Technicians employed by Defendant at the Ada County Sheriff's Office at any time between June 8, 2001, and June 8, 2004, whom Defendant classified as exempt under the 7(k) exemption;

(2) requiring Defendant to provide names and addresses of absent class members; and

(3) requiring the Parties to confer on a form of Section 16(b) notice with opt-in right.

DATED this ____ day of February, 2005.

                              HUNTLEY PARK, LLP

                              _____
                              Daniel E. Williams
                              Attorneys for Plaintiffs